# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL VALIANT,<br><br>                  Plaintiff,<br><br>v.<br><br>ANDREW SAUL[1], Commissioner of Social Security,<br><br>                  Defendant. | Case No.: 17cv02085 JAH-AGS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT [Doc. Nos. 15, 16]** |

## **INTRODUCTION**

       Michael Valiant ("Plaintiff"), through counsel, filed this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Defendant") finding Plaintiff was no longer disabled under the Act. Plaintiff filed a motion for reversal or remand of the commissioner's administrative decision and Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment or remand. After a thorough review of the pleadings filed by the parties along with the entire record submitted

---

[1] Andrew Saul is named in place of Nancy A. Berryhill as Commissioner of Social Security Administration, pursuant to Fed. R.Civ. P. 25(d).

in this matter, and for the reasons set forth below, this Court **DENIES** Plaintiff's motion for summary judgment, and **GRANTS** Defendant's cross-motion for summary judgment.

## FACTUAL BACKGROUND

Plaintiff, who was born on July 2, 1974, is currently 45 years of age. AR[2] 35. Plaintiff lacks past relevant work experience. *Id*. Plaintiff was found disabled as of September 1, 2001, and began receiving Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments. AR 28. On July 1, 2005, in a continuing disability review ("CDR"), the agency re-evaluated and continued Plaintiff's disability. *Id.* In a subsequent CDR on November 14, 2014, the agency determined Petitioner was no longer disabled as of November 1, 2014. *Id.* Plaintiff's claim was again denied upon reconsideration on November 3, 2015. AR 128-30. Thereafter, Plaintiff filed a timely request for a hearing before a United States Administrative Law Judge ("ALJ"). AR 132-33. Plaintiff appeared and testified at the hearing on May 26, 2016, without the assistance of an attorney or other representative. AR 50-71. The ALJ issued an unfavorable decision and denied continuing benefits in a written decision dated June 28, 2016. AR 25-36. At the hearing, Elizabeth G. Brown-Ramos, a vocational expert, provided testimony. Plaintiff filed a request for review of the ALJ's decision and the Appeals Council denied the request. AR 1-6.

Plaintiff, appearing through counsel, filed the complaint seeking review of the Commissioner's final decision denying Plaintiff disability benefits on October 11, 2017. *See* Doc. No. 1. Defendant filed an answer and the administrative record on June 4, 2018. *See* Doc. Nos. 11, 12. Plaintiff filed a motion for summary judgment seeking reversal or remand of the defendant's administrative decision on September 10, 2018. *See* Doc. No. 15. Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's

---

[2] AR refers to the administrative record lodged with this Court.

motion on October 11, 2018. *See* Doc. No. 16. On the same day, Plaintiff replied to Defendant's response in opposition. *See* Doc. No. 17.

# DISCUSSION

## I. Legal Standards

### A. Qualifying for Disability Benefits

To qualify for disability benefits under the Act, an applicant must show that: (1) he suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. § 423(d)(1)(A), 2(A). An applicant must meet both requirements to be "disabled." *Id*.

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404 Appendix 1 to Subpart P. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If a condition "falls short of the [listing] criterion" a multiple factor analysis is appropriate. *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003). Of such analysis, "the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such

impairment, if considered separately, would be of such severity." *Id*. at 1182 (*quoting* 42 U.S.C. § 423(d)(2)(B)). If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant cannot perform his previous work, the fifth and final step of the process determines whether he is able to perform other work in the national economy considering his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

### B. Termination of Disability Benefits

After a person is found to be entitled to disability benefits, the Commissioner is required to periodically review whether continued entitlement to such benefits is warranted using a multi-step sequential evaluation process. 20 C.F.R. §§ 404.1594, 416.994 (2017). Such a person is no longer entitled to benefits when substantial evidence demonstrates (1) "there has been any medical improvement in the [claimant's] impairment" and (2) the claimant "is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1)(A)-(B). To determine whether there has been medical improvement, an ALJ must compare the current medical severity of the claimant's impairment to the medical severity of the impairment "at the time of the most recent favorable medical decision that [the claimant] w[as] disabled or continued to be disabled." *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016) (*citing* 20 C.F.R. § 404.1594(b)(7)); *see also* 20 C.F.R. § 404.1594(b)(7) (2017). In "termination cases where the ALJ finds a claimant is disabled (or continues to be disabled) in one decision and, in a later decision, finds the claimant has medically improved[,]" the "most recent favorable medical decision is an earlier decision, and severity of the claimant's impairment at the time of that decision provides the relevant baseline for comparison." *Attmore*, 827 F.3d at 876. The most recent favorable medical decision is also known as the comparison point decision ("CPD"). If "a claimant has been found disabled, he or she is entitled to a presumption that the disability still exists." *Murray v. Heck*ler, 722 F.2d 499, 500 (9th Cir. 1983) (further citation omitted). To revoke benefits, "the Commissioner bears

4

the burden of establishing that a claimant has experienced medical improvement that would allow him to engage in substantial gainful activity." *Id*.

The ALJ relies on an eight-step sequential evaluation process to determine whether a claimant remains disabled under Title II and a seven-step sequential evaluation process to determine whether an individual continues to be disabled under Title XVI. *See* 20 C.F.R. §§ 404.1594, 416.994.

Step one of the Title II evaluation requires the ALJ to determine if the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If the individual is engaged in substantial gainful activity, then a finding of no longer disabled is made. *Id*. § 404.1594(f)(1). If the individual is not engaged in substantial gainful activity, then the analysis proceeds to step two.

Step two under Title II and step one under Title XVI requires an ALJ to determine if the claimant has an impairment or combination of impairments that meets or medically equals a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing, his disability continues. *Id*. § 404.1594(f)(2), 416.994(b)(5)(i). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing, then the analysis proceeds to steps three and two, respectively.

Under Step three under Title II and step two under Title XVI, the ALJ will determine whether "medical improvement" has occurred. *Id*. §§ 404.1594(f)(3), 416.994(b)(5)(ii). Medical improvement is "any decrease in the medical severity of the impairment(s)" that was present at the time the individual was determined to be disabled. *Id*. §§ 404.1594(b)(1), 416.994(b)(1)(i). A finding that there has been a decrease in medical severity must be based on changes in the symptoms, signs, or laboratory findings associated with the impairment. *Id.* In assessing whether medical improvement has occurred, the medical severity of the impairments present at the time of the most recent favorable decision of disability is compared to the current medical severity of those same impairments. *Id*. §§

404.1594(b)(7), 416.994(b)(5)(vi). If there has been medical improvement, the analysis proceeds to the fourth step under Title II and the third step under Title XVI. If no medical improvement has occurred, the analysis proceeds to the fifth step for the Title II claim and the fourth step for the Title XVI claim.

Step four under Title II and step three under Title XVI requires an ALJ to determine if medical improvement has occurred and whether the improvement is related to the claimant's ability to work. *Id.* §§ 404.1594(f)(4), 416.994(b)(5)(iii).

Step five under Title II and step four under Title XVI requires an ALJ to determine if an exception to medical improvement applies. *Id.* §§ 404.1594(f)(5), 416.994(b)(5)(iv). There are two groups of exceptions[3]. *Id.* §§ 404.1594(d)-(e), 416.994(b)(3)-(4). If an exception from the first group applies, the analysis proceeds to the next step. § 404.1594(d)(1)-(5). If an exception from the second group applies, the individual's disability ends. If no exception applies, the individual's disability continues. § 404.1594(e)(1)-(4).

Step six under Title II and step five under Title XVI requires an ALJ to determine whether all the individual's current impairments in combination are severe. *Id*. §§ 404.1594(f)(6), 416.994(b)(5)(v). If all the current impairments do not significantly limit the individual's ability to do basic work activities (*i.e.*, are not severe), the individual is no longer disabled. If they do, the analysis proceeds to the next step.

Step seven under Title II and step six under Title XVI requires an ALJ to assess the individual's residual functional capacity ("RFC") based on the current impairments and determine if he can perform his past relevant work. *Id.* §§ 404.1594(f)(7), 416.994(b)(5)(vi). If the individual has the capacity to perform past relevant work, his disability has ended. If not, the analysis proceeds to the last step.

---

[3] The Court will not detail the exceptions to medical improvement.

At step eight under Title II and step seven under Title XVI, if the claimant remains unable to perform past relevant work, the ALJ will determine whether the claimant can perform other work that exists in the national economy given his RFC, age, education, and past relevant work experience. *See* 20 C.F.R. § 404.1594(f)(1)–(8).

### C. Judicial Review of an ALJ's Decision

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (*quoting Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (*quoting Andrews*, 53 F.3d at 1039).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (*citing Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (*quoting Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

However, even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a decision. *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administrator for further proceedings. *Id*. "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (*quoting Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

**II.     The ALJ's Decision**

In the present case, the ALJ identified the CPD as the July 5, 2005, decision finding Plaintiff disabled as of September 1, 2001. AR 30. At the time of the CPD, Plaintiff suffered from the following medically determinable impairments: an affective disorder and an anxiety disorder. *Id*. The ALJ then followed the eight and seven-step sequential evaluation processes set forth in 20 C.F.R. §§ 404.1594 and 416.994 under Titles II and XVI, respectively. AR 30-36.

At step one under Title II, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his disability ended on November 1, 2014. AR 30.

At step two of the Title II analysis and step one of the Title XVI analysis, the ALJ determined that Plaintiff had the following medically determinable impairments: a mood disorder; an anxiety disorder; post-traumatic stress disorder. *Id*. However, the ALJ determined that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 30-32.

At step three of the Title II analysis and step two of the Title XVI analysis, the ALJ determined that Plaintiff experienced medical improvement as of November 1, 2014. AR 32-35.

At step four of the Title II analysis and step three of the Title XVI analysis, the ALJ determined that Plaintiff's medical improvement related to his ability to work because, as of November 1, 2014, Plaintiff's impairments no longer met or medically equaled the same listing that was met at the time the Commissioner determined Plaintiff was disabled. AR 32. The ALJ determined Plaintiff's residual functional capacity is less restrictive than it was at the time of the CPD. *Id*.

Because Plaintiff's medical improvement related to his ability to work, the ALJ proceeded to steps six and five under Title II and Title XVI, respectively. *Id*. At this step, the ALJ determined that although Plaintiff experienced medical improvement, he continued to have a severe impairment or combination of impairments. *Id*.

Next, at steps seven and six under Titles II and XVI, respectively, the ALJ determined Plaintiff's RFC and found that Plaintiff could perform medium work, with the following additional limitations: able to perform only non-complex, routine tasks; and unable to perform tasks that require hypervigilance, responsibility for the safety of other people, interaction with the general public, or significant teamwork. *Id.* The ALJ also found that Plaintiff has no past relevant work. AR 35. In assessing the Plaintiff's residual functional capacity, the ALJ relied on the reports of Doctors To, Glover, Krieg, Johnson, and Gregg. AR 34-35, 394-98, 409-12, 436-42, 443-44, 459-60.

Finally, at the last step under Titles II and XVI, respectively, the ALJ determined that Plaintiff, considering his age, education, work experience, and residual functional capacity, could work as a machine feeder (D.O.T. 699.686-010), factory helper (D.O.T. 529.686-034), or washer (D.O.T. 599.687-030). AR 35-36. Because the ALJ found these jobs existed in significant numbers in the national economy, he concluded that Plaintiff was no longer disabled as of November 1, 2014. AR 36.

**III. Analysis**

Plaintiff seeks reversal or remand of the instant matter on the grounds that (1) the ALJ failed to articulate specific and legitimate reasons in rejecting Plaintiff's testimony, and (2) the ALJ improperly rejected the medical evidence from the treating physician, Beth

9

Kalal, Ph.D. *See generally* Doc. No. 15. Defendant cross-moves for summary judgment contending that (1) the ALJ properly evaluated the treating physician's opinions considering the lack of corroborating clinical findings and contrary opinions, and (2) Plaintiff's unsupported allegations were reasonably rejected by the ALJ. *See generally* Doc. No. 16.

### A. Plaintiff's Testimony

Plaintiff argues the ALJ failed to articulate specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony. *See* Doc. No. 15. Specifically, Plaintiff—citing to the Seventh Circuit—argues the ALJ improperly set forth conclusory boilerplate language in support of rejecting Plaintiff's testimony. *Id.* at 8-9. Plaintiff also contends the ALJ rejected Plaintiff's testimony because it lacked support in objective medical evidence—which Plaintiff argues is legally insufficient and contravenes established case law and regulations. *Id.* at 8-9.

Further, Plaintiff contends once he produced medical evidence of an underlying medical impairment, "the ALJ could not discredit the testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Id.* at 10 (*citing Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). As such, Plaintiff argues, the ALJ must find the Plaintiff is credible as a witness. *Id.* at 13.

Defendant argues the ALJ reasonably concluded that the record lacked evidence to support the full extent of Plaintiff's subjective complaints. *See* Doc. No. 16 at 14. Defendant further contends that the ALJ provided specific credibility findings that were supported by the evidence of record, including that the objective medical evidence undercut the credibility of Plaintiff's allegations of disability, given the divergence between his subjective complaints and the objective clinical findings.

Defendant specifically argues the ALJ found there was little objective evidence of physical impairment in light of consultative examiner Dr. To's observations that: Plaintiff carried a cane but walked normally without it; Plaintiff did not have significant problems with his joints apart from mild tenderness; Plaintiff had only mild scoliosis in his back; a

straight leg raising test for disk herniation was negative; Plaintiff had normal muscle strength and range of motion; Plaintiff had grossly intact sensation. *Id*. at 15-16. As to Plaintiff's mental impairments, Defendant argues Beth Kalal, Ph.d.'s letters did not disclose clinical findings to support Plaintiff's testimony, while Dr. Krieg's examination "did not… indicate any mental diagnosis." *Id.* at 16. Defendant further contends the ALJ properly discredited Plaintiff's allegations of a mental condition in light of the lack of evidence of treatment notes and lack of psychiatric hospitalization. *Id.*

Additionally, Defendant argues the ALJ properly discredited Plaintiff's allegations of physical disability as the record lacked evidence of treatment for joint and other pain. *Id.*

The ALJ's credibility finding must be properly supported by the record and "sufficiently specific to assure a reviewing court that the ALJ did not arbitrarily discredit a claimant's subjective testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). An ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. Unless an ALJ makes a finding of malingering based on confirming evidence, the ALJ may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each. *Id*.

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective

11

medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (*quoting Bunnell,* 947 F.2d at 344). When doing so, "the claimant need not show that h[is] impairment could reasonably be expected to cause the severity of the symptom [ ]he has alleged; [ ]he need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of h[is] symptoms only by offering specific, clear and convincing reasons for doing so.' " *Lingenfelter*, 504 F.3d at 1036 (*quoting Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell*, 947 F.2d at 345-46). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

In the written decision, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying step one of the two-part framework. AR 33. The ALJ, however, determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id*. Thus, the question is whether the ALJ provided "clear and convincing" reasons for rejecting Plaintiff's symptom testimony.

Plaintiff maintains the ALJ's finding was vague and insufficient, alone, to reject his testimony regarding his symptoms. However, the ALJ provides additional reasons for the credibility finding. Plaintiff alleged that he suffered from headaches, fatigue, neuropathy, and spinal abnormalities, however treatment notes did not substantiate these complaints. AR 33. Rhe ALJ finds the record does not support any treatment for any of Plaintiff's physical impairments, such as "x-ray, MRI. . . electrodiagnostic testing indicative of spinal abnormalities or neuropathy… treatment for headaches or fatigue." *Id.* "Unexplained. . . failure to seek treatment" absent a good reason, is a valid reason for rejecting symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Furthermore, although Plaintiff reports anxiety and post-traumatic stress disorder, a physician who examined him in 2014 opined that Plaintiff showed little evidence of mental impairment. AR 34. Another examining psychiatrist in 2014 stated Plaintiff had mild limitations in performing work-related mental functions. *Id.* A third examining psychiatrist stated Plaintiff had moderate limitations, which the ALJ credited with significant weight. AR 34-35. The ALJ found that the record does not document any treatment records or any evidence of psychiatric hospitalization. AR 34.

An ALJ may not discount subjective symptom testimony "on the sole ground that [it is] not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ here went beyond this by identifying specific inconsistencies between Plaintiff's symptom testimony and the objective medical record. The ALJ noted Plaintiff's own admission that he would likely be able to work if not for his fear of the woman he believes is stalking him. *Id.* The statement was inconsistent with Plaintiff's self-reported impairments that limit his functioning. AR 34. Such inconsistencies are clear and convincing reasons for rejecting Plaintiff's symptom testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (concluding that discrepancies between plaintiff's testimony and the objective medical record was a clear and convincing reason to reject plaintiff's testimony). Further, the ALJ found the lack of treatment records from Plaintiff's treating psychologist or evidence of psychiatric

13

hospitalization also undermines Plaintiff's subjective testimony. *Johnson v. Shalala*, 60 F.3d 1428, 1433–34 (9th Cir.1995) ("An ALJ may rely on the conservative nature of treatment or a lack of treatment in rejecting a claimant's subjective complaint of pain.")

### B. Plaintiff's Treating Physician's Opinion

Plaintiff contends the ALJ improperly failed to afford controlling weight to Beth Kalal, Ph.d's findings. Doc. No. 15 at 15. Plaintiff also contends the ALJ failed to articulate a legally sufficient rationale to reject the treating opinion, which results in a reversable error. *Id.*

Defendant argues that the ALJ did not outright reject Dr. Kalal's opinion, rather, the ALJ found that Plaintiff could only perform non-complex, routine tasks and no tasks requiring hypervigilance, responsibility for the safety of others, interaction with the general public, or significant teamwork. Doc. No. 16 at 11. Specifically, the Defendant contends the ALJ's findings were based on, (1) Plaintiff's treatment history reflecting only therapy and no ongoing medication or hospitalization, (2) the opinions from doctors To, Krieg, Johnson, and Gregg that Plaintiff could perform the mental demands of work at the level required in the Residual Functional Capacity finding. *Id.*

An ALJ may reject opinions of treating physicians under certain circumstances. *See Batson,* 359 F.3d at 1195. Generally, a treating physician's opinion is controlling over a non-treating physician's opinion. *See* 20 C.F.R. § 404.1527.

However, if the treating physician's opinion is contradicted by another physician, as is the case here, the ALJ may reject the treating physician's opinion if it provides " 'specific and legitimate reasons' supported by substantial evidence in the record[.]" *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). "The findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir. 1996); *see also Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) (stating that a nonexamining physician's opinion must be "supported by other evidence in the record and [be] consistent with it.") Furthermore, "an ALJ may discredit treating physicians'

14

opinions that are conclusory, brief, and unsupported by the record as a whole ... or by objective medical findings." *Batson,* 359 F.3d at 1195 (*citations omitted*).

An ALJ must consider specific factors in determining the weight of a treating physician's opinion, including: (1) the length of the treatment relationship and the frequency of examination, and (2) the nature and extent of the treatment relationship. *Ortega v. Commissioner of Social Sec.*, 2013 WL 6798930 *6 (*quoting Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)). Factors relevant in evaluating the weight of any medical opinion, not just treating physician opinions, include: (1) the amount of relevant evidence that supports the opinion and the quality of the explanation provided, (2) the consistency of the medical opinion with the record as a whole, (3) the specialty of the physician providing the opinion, and (4) other factors such as the degree of understanding a physician has of Social Security disability programs and their evidentiary requirements and the physician's familiarity with other information in the record. *Id.*

Here, the record reflects the findings made by Dr. Charlene K. Krieg, Dr. Kevin Gregg, and Dr. G. Johnson, along with other medical records, contradicted Dr. Kalal's statements as to Plaintiff's mental impairments. AR 34-35; 394-98; 399-413; 443-57. Dr. Kreig found that Plaintiff did not evidence a mental disorder, "that would limit his ability to engage in work activities and complete a normal workday[.]" AR 398. Dr. Gregg reports he found no evidence of a mental health disorder that prevents work activities, despite Plaintiff's struggle with attention and concentration. AR 409. Finally, Dr. Johnson found Plaintiff had moderate limitations, which the ALJ credited with significant weight. AR 34-35; 443-57. Meanwhile, the administrative record includes reports by treating physician, Dr. Kalal. Therein, Dr. Kalal opines that Plaintiff has a GAF of 45, indicative of seriously limiting symptoms. AR 36. Dr. Kalal also states Plaintiff has poor functioning with respect to most work-related mental activities. *Id.* However, the ALJ states Dr. Kalal merely refers to Plaintiff's mental health treatment, however, no such treatment records are documented. AR 34. Additionally, the ALJ states that Dr. Kalal's reports fail to signify any clinical findings, rather, she merely narrates Plaintiff's personal problems, and uncritically

endorses Plaintiff's subjective complaints to a significant extent. *Id.* Because the content of the reports is indeed conclusory, narrative, and does not indicate any clinical findings, the Court finds the ALJ properly found that Dr. Kalal's opinions as to Plaintiff's mental impairments are not supported by the record as a whole. Therefore, the ALJ's refusal to extend controlling weight to Dr. Kalal's findings was proper because of the deficiency of the reports and evidence contained in the overall record, as cited by the ALJ.

This Court also finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Kalal's opinions and adopting the opinions of Drs. To and Glover regarding Plaintiff's physical impairments. Dr. Kalal reports that numbness in his fingers and legs suggests Plaintiff has major orthopedic issues from scoliosis and a hip injury. AR 20, 467. Dr. Kalal also reports several major head injuries that resulted in both physiological and psychological consequences. AR 467-68. The record reflects findings by Drs. To and Glover. Dr Sean To conducted an internal medicine evaluation which indicated mild scoliosis, and no significant limitation in Plaintiff's hands or ability to perform manipulative activity. AR 33-34; 436-42. Dr. To also stated that Plaintiff presented with a cane, which was unnecessary, as Plaintiff ambulates with a normal gait. *Id.* Dr. Glover found the following for Plaintiff's residual functional capacity: able to lift 25-pounds frequently, and 50-pounds occasionally; able to stand/walk six hours in an eight-hour workday; and able to sit six hours in an eight-hour workday. AR at 34; 458-66. The ALJ notes that the record "does not document x-ray, MRI, or electrodiagnostic testing indicative of spinal abnormalities or neuropathy." AR 33. Despite Dr. Kalal's statements regarding Plaintiff's physical symptoms, the ALJ noted the record does not include any assessment of the Plaintiff's physical functional capacity by a treating physician. Notably, Dr. Kalal's statements as to Plaintiff's physical impairments are unsupported by the overall record but are also not within her area of competence as a licensed psychologist, and therefore not appropriate as evidence. *See Richardson v. Peralas*, 402 U.S. 389, 402 (1971) ("We conclude that a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings *in his area of competence* may be received

as evidence in a disability hearing.") (*emphasis added*). Therefore, because the opinion of Dr. Kalal is not consistent with the medical records and the opinions of Dr. To and Dr. Glover, the ALJ properly provided specific and legitimate reasons for adopting Drs. To and Glover's medical opinions over Dr. Kalal's opinions.

Therefore, the Court finds that the ALJ presented specific, and legitimate reasons for not giving controlling weight to Dr. Kalal's opinions, and the ALJ's decision is properly supported by the record. Thus, the ALJ did not err in failing to give controlling weight to Dr. Kalal's opinions.

## CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's motion for reversal or remand of the commissioner's administrative decision, (Doc. No. 15), is **DENIED** and Defendant's cross-motion for summary judgment, (Doc. No. 16), is **GRANTED**.

**IT IS SO ORDERED.**

DATED: April 13, 2020

_____
JOHN A. HOUSTON
United States District Judge